**Ronald Lent v. H. J. Huntoon and Huntoon Business Machines, Inc.**

[470 A.2d 1162]

No. 82-155

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed November 1, 1983

542

*Kelley & Meub, Ltd.,* Middlebury, for Plaintiff-Appellee.

*Joseph M. O'Neill,* Rutland, for Defendants-Appellants.

**Underwood, J.** Defendants appeal from a verdict and judgment rendered in the Rutland Superior Court. The jury found the defendants liable for defamation and awarded plaintiff a total of $40,000 in compensatory and punitive damages. We affirm the judgment.

Plaintiff in his complaint alleged libel and slander by defendant H. J. Huntoon, individually, and defendant Huntoon Business Machines, Inc. The suit resulted from events following the termination of plaintiff's employment by the defendants. A letter signed by H. J. Huntoon, who was president and agent of Huntoon Business Machines, Inc., and which was written on the corporation's letterhead was circulated to numerous business machine customers and was the basis of plaintiff's cause of action for libel. Several oral statements allegedly made by H. J. Huntoon as agent for Huntoon Business Machines, Inc., after publication of the letter form the basis of the cause of action for slander. Defendants denied the material allegations in the complaint, and, by way of an amended answer, advanced affirmative defenses of truth and privilege.

After plaintiff's case was completed, defendants moved for a directed verdict on the issues of special (economic) damages and punitive damages. The motion was denied. These same motions were renewed and denied after the close of all the evidence.

The jury was instructed on libel and slander, truth, privilege, malice, compensatory damages, and punitive damages. While perhaps special verdicts or jury interrogatories would have been preferable in a complicated case such as this, the trial court's instructions were essentially correct. Furthermore, defendants made no objection to the charge. The jury returned a verdict for the plaintiff of $15,000 in compensatory and $25,000 in punitive damages.

After judgment was entered, the defendants moved for judgment notwithstanding the verdict, or in the alternative for a new trial or remittitur. The trial court denied these motions as well.

Plaintiff worked for Huntoon Business Machines, Inc. (Huntoon Corporation) from 1964 until his employment was terminated in 1977—a period of thirteen years. During that time he worked his way up to the position of service manager. At the time he was hired, in 1964, the plaintiff informed defendant H. J. Huntoon (Huntoon) that he was on probation for a criminal conviction and that he had once been confined to the base for a period of time for a minor offense during his service in the Air Force. Defendants hired plaintiff with full knowledge of these events.

In the early part of 1977, plaintiff informed Huntoon that he would be leaving his job at Huntoon Corporation as he was moving to Florida as soon as he and his wife could sell their house. He offered to stay on long enough to train his successor. Shortly thereafter, and without any prior notice, Huntoon told plaintiff that he was discharged.

Plaintiff was unable to sell his house and so decided to remain in Rutland. In August of 1977, he started his own business equipment sales and service business, Lent Business Machines. Early in March of 1978, plaintiff was awarded a cash register sales and service franchise formerly held by the Huntoon Corporation. Thus, plaintiff and Huntoon Corporation became direct competitors. About this same time, plaintiff became aware that defendants sent a letter to the cash register franchise customers who were formerly serviced by Huntoon Corporation and for whose business both the plaintiff and defendants were then vying. The letter, which indicated that plaintiff had been discharged for "sound business reasons," formed the basis of plaintiff's libel count. Plaintiff asserted that the letter, taken in its totality, was defamatory since it implied that he was fired because of some dishonesty or incompetence. There was evidence that the letter caused plaintiff to become estranged from some of his customers, to suffer physical and emotional malaise, and to neglect his business to the point where it nearly collapsed.

About this time, plaintiff became aware of numerous verbal statements made about him by Huntoon to customers sought

after by both plaintiff and defendants. Testimony revealed that these statements asserted that plaintiff had a criminal "record a mile long," had stolen merchandise from the defendants, had stolen money from the cash register of Huntoon Corporation, was an incompetent serviceman, and was generally untrustworthy. Testimony indicated that most of these statements were made by Huntoon in competitive business situations. Plaintiff asked Huntoon to stop making the statements, apparently to no avail, as there was further testimony that some of the statements were made even after plaintiff's lawsuit was initiated. Some testimony indicated that the defendants were fully satisfied with plaintiff's work prior to termination and had never complained about any thefts by plaintiff prior to his leaving Huntoon Corporation. Defendants also knew he intended to leave his job voluntarily and was not fired.

We take this opportunity to review the law of defamation as applicable to this case. Seldom, if ever, in our previous decisions has an overview of defamation been attempted, and, except for the First Amendment cases involving public figures, most of Vermont's guidelines for this odd and somewhat complicated area of tort law must be gleaned from nineteenth century case law. Our somewhat extended clarification at this time will delineate the law applicable to this appeal so that we may make a meaningful evaluation of the issues raised.

Defamation is comprised of the complementary torts of libel and slander. Although these torts evolved from different antecedents, both were eventually cognizable in the King's courts in England prior to reception of the common law in Vermont. See generally Veeder, *The History and Theory of the Law of Defamation,* 3 Colum. L. Rev. 546 (1903) ; W. Prosser, Handbook of the Law of Torts 737–39 (4th ed. 1971). Because of the permanence of the written word, libel was considered the more serious tort, with slander, or the spoken word, considered the less serious. The distinction between written and spoken defamation has resulted in a host of special rules with corresponding special legal terminology. Herein lies much of the confusion which abounds even today.

Libel is generally considered "actionable per se"; that is, the plaintiff need not allege nor prove that he or she suffered any "special damages" as a direct or proximate result

of the libel. Special damages, in short, are presumed. Special damages have a unique connotation in the law of defamation. Special damages are those of a pecuniary nature, and historically they have included loss of customers or business, loss of contracts, or loss of employment. W. Prosser, *supra*, at 760–61. In addition,

> modern decisions have shown some tendency to liberalize the old rule, and to find pecuniary loss when the plaintiff has been deprived of benefit which has a more or less indirect financial value to him. Thus the loss of the society, companionship and association of friends may be sufficient when . . . it can be found to have a money value.

Restatement (Second) of Torts § 575 comment b, at 198 (1977).

■ Slander, on the other hand, is generally not actionable per se; that is, special damages are not presumed and must be alleged and proven. Several kinds of slander, however, were identified at English common law as more serious than others and these were held to be actionable per se. Spoken defamation involving (1) imputation of a crime, (2) statements injurious to one's trade, business or occupation, or (3) charges of having a loathsome disease were deemed slander per se and were actionable without proof of special damages. W. Prosser, *supra*, at 754. The decisions of our Court are in accord with this common law exception. Most American jurisdictions added still a fourth exception: charging a woman to be unchaste. Thus "actionable per se" simply means special damages need not be proved in libel actions or in those slander actions which fall into one of the exceptions categorized as slander per se.

■ The general elements of a private action for defamation (libel and/or slander) are: (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement;[1] (3) publication to at least

---

[1] Element (2) is required by the United States Supreme Court. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974), the Court observed: "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability [in defamation actions]." Thus, strict liability for all state defamation now appears impermissible. See Restatement, *supra*, §§ 558, 580B. *Gertz* also requires element (6). 418 U.S. at 349. See text *infra*.

one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages.

For reasons probably lost in history, a special rule of procedure developed for the trial of a defamation action. Once the plaintiff's evidence was in, the court had to determine whether the written or spoken words were defamatory as a matter of law. If the court was in doubt because the connotation of the written or spoken words was ambiguous, then the court had to submit the question to the jury to decide. *Lancour* v. *Herald & Globe Association,* 111 Vt. 371, 379, 17 A.2d 253, 256 (1941) (*Lancour I*). In libel actions, when the court determined that the written words were libelous as a matter of law, the term "libel per se" was used. This unfortunate terminology when used in conjunction with such terms as "slander per se" and "actionable per se" has greatly confused courts and counsel. "Libel per se" simply means defamatory as a matter of law. Since all libel is actionable per se, it makes no difference whether the court rules that the written words are defamatory as a matter of law, or that the written words are ambiguous and the jury determines that there is defamation; in each instance special damages need not be proven.

A further complication in the semantics of defamation law arose when the courts embarked upon the "spurious" concept of a "libel per quod." Eldredge, *The Spurious Rule of Libel Per Quod,* 79 Harv. L. Rev. 733 (1966). This rule only served to compound an already confusing area of the law of torts. Being written, libel is generally evaluated by examining the four corners of the writing itself. A letter or newspaper article can be introduced at trial and its defamatory nature determined by judge or jury as appropriate. Some writings, however, are seemingly innocent in and of themselves, and resort must be had to extrinsic evidence to determine if they have defamatory qualities. If the writing together with the extrinsic evidence constitutes defamation, such a writing is referred to as "libel per quod" in several American jurisdictions. 50 Am. Jur. 2d *Libel and Slander* § 9. These jurisdictions require that special damages be proven for libel per quod, unless the libel falls into one of the exceptions we previously mentioned as constituting slander per se. Thus, under this rule, the simple fact

that extrinsic evidence must be used to prove the defamatory nature of a libel prevents it from being "actionable per se" and special damages must be proven.

A scholarly debate concerning libel per quod took place before the Restatement (Second) of Torts was published. Prosser, *Libel Per Quod,* 46 Va. L. Rev. 839 (1960) ; Eldredge, *supra;* Prosser, *More Libel Per Quod,* 79 Harv. L. Rev. 1629 (1966). Thereafter, section 569 of the Restatement reflects the simpler rule and rejects any notion of libel per quod.

■■ Vermont's reported decisions do not recognize libel per quod, and we adhere to the wisdom of that course today. We hold that libel, whether defamatory on the face of the writing alone or with the aid of extrinsic evidence, is actionable per se. Our previous use of the term libel per se in no way, directly or inferentially, encompasses the rule of libel per quod. In the appropriate circumstances we recognize that libel per se may be found either solely from the writing or from the writing together with extrinsic evidence. Similarly the question of whether an ambiguous writing is defamatory or not is a jury question under either set of circumstances.

Given the great confusion in this area, we urge the future use of the term "libel as a matter of law" in situations where "libel per se" has been used in the past. "Libel as a matter of law" and where appropriate "slander as a matter of law" accurately identify the issue as one of law for the preliminary determination of the trial court.

■ In the case before us the pleadings include one count sounding in libel and one count sounding in slander. Two defenses to these allegations of defamation are raised : truth and privilege. Truth, of course, defeats the action and is a complete defense to defamation. See *Lancour I, supra,* 111 Vt. at 379, 17 A.2d at 256 ; Restatement, *supra,* § 581A ; 50 Am. Jur. 2d *Libel and Slander* § 179 (citing *Lancour I* in note 8). The privilege raised here is a conditional privilege which may be overcome by a showing of malice.[2] The defendants allege a privilege to

---

[2] Malice is raised in this case in two separate contexts: malice must be shown to defeat a conditional privilege, and malice must be shown before the jury can consider punitive damages. Although the same evidence may be used to prove both kinds of malice, as legal elements they operate independently. See also *infra* notes 3 and 4.

protect their legitimate business interests. This privilege is recognized in Restatement (Second) of Torts, *supra*, § 595 comment d, and we hold it to be applicable in Vermont. The burden of proving the privilege is on the defendants. Restatement, *supra*, § 613 (2) ; 50 Am. Jur. 2d *Libel and Slander* § 451.

A showing of malice, however, may defeat the conditional privilege, Prosser, Handbook of the Law of Torts, *supra*, at 794, but in such instance the plaintiff must show malice by clear and convincing proof. In this sense malice may be either actual or implied. The court will infer malice upon a showing that the defendant knew the statement was false or acted with reckless disregard of its truth. See Restatement, *supra*, § 600. Actual malice includes spiteful or wanton conduct. *Id.* at § 603 comment a.

This case also raises the issue of general and punitive damages in defamation. At the outset, we must observe that even though libel and some forms of slander are actionable per se and special damages need not be proven, a plaintiff can no longer recover general damages without a showing of some harm. In *Gertz* v. *Robert Welch, Inc.*, *supra*, the United States Supreme Court noted that state remedies for defamation must be restricted "to compensation for *actual injury.*" *Id.* at 349 (emphasis added). This, of course, applies to general or compensatory damages that "include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350. This was recognized in *Colombo* v. *Times-Argus Association, Inc.*, 135 Vt. 454, 455, 380 A.2d 80, 82 (1977). We are persuaded and now hold that liability for defamation must logically be based on some showing of harm to the plaintiff. Thus, Vermont will require defamation plaintiffs to demonstrate some "actual harm" as a prerequisite to recovering general damages. To the extent that *Lancour* v. *Herald & Globe Association*, 112 Vt. 471, 475, 28 A.2d 396, 399 (1942) (*Lancour II*) allowed recovery of general damages "without proof of loss or injury," it is overruled. Likewise, to the extent that our recent opinion *Greenmoss Builders, Inc.* v. *Dun & Bradstreet, Inc.*, 143 Vt. 66, 461 A.2d 414 (1983), relied on that aspect of *Lancour II, supra*, it has no force. In summary, defamation that is actionable per se will require some showing of actual harm, but not of special dam-

550

ages before recovery of general, or compensatory, damages. This sound rule is reflected in the Restatement, *supra*, § 621.

■■■■■■ Finally, this case raises the question of punitive damages. Once general (compensatory) damages are established, *Allard* v. *Ford Motor Credit Co.*, 139 Vt. 162, 164, 422 A.2d 940, 942 (1980), punitive damages may be awarded on a showing of actual malice,[3] *Lancour II, supra,* 112 Vt. at 478, 28 A.2d at 401, but actual malice may not be considered to enhance compensatory damages. *Id.* at 480, 28 A.2d at 402. "[Malice] may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights." *Shortle* v. *Central Vermont Public Service Corp.*, 137 Vt. 32, 33, 399 A.2d 517, 518 (1979), *quoted in Greenmoss Builders, Inc.* v. *Dun & Bradstreet, Inc., supra,* 143 Vt. at 77, 461 A.2d at 419. Malice supporting punitive damages may be shown by proving that the defendant repeated the defamatory statement, especially when the repetition occurred after commencement of the lawsuit. *Lancour II, supra,* 112 Vt. at 480, 28 A.2d at 402.

■■■■■ Once malice sufficient to entitle plaintiff to punitive damages has been shown, the plaintiff may present evidence of defendant's financial condition: "Where exemplary damages are awardable . . . the defendant's pecuniary ability may be considered in order to determine what would be a just punishment for him." *Kidder* v. *Bacon*, 74 Vt. 263, 274, 52 A. 322, 324 (1902).

The foregoing reviews the law of defamation raised in this appeal. We turn now to the specific issues raised by defendants.

Essentially, defendants claim three errors in the proceeding below: (1) the trial court erred in denying defendants' motion for judgment notwithstanding the verdict, (2) the trial court erred in denying defendants' motion for a new trial, and (3) the trial court abused its discretion in denying defendants' motion for remittitur.

---

[3] "Actual" is used here to emphasize the factual basis of this malice. Since punitive damages are within the jury's discretion, they must be based on "actual" evidence of malice, rather than implied or constructive malice.

██ Defendants' motion for judgment notwithstanding the verdict falls under the provisions of V.R.C.P. 50(b). V.R.C.P. 50(b) requires that legal issues be raised on motion for directed verdict at the close of all the evidence in order to be challenged later by way of judgment notwithstanding the verdict. *Merrill v. Reville,* 135 Vt. 517, 519, 380 A.2d 96, 98 (1977). We note that after the close of all the evidence defendants moved for a directed verdict only on the questions of special and punitive damages. Pursuant to the restraints of V.R.C.P. 50(b), only those issues may be challenged in the motion for judgment notwithstanding the verdict.

We have construed this rule strictly and held that even where a motion for directed verdict was made at the end of plaintiff's case, if not renewed at the close of all the evidence as required by V.R.C.P. 50(b), the issues are waived for purposes of appeal to this Court. *Houghton v. Leinwohl,* 135 Vt. 380, 381–82, 376 A.2d 733, 735–36 (1977). Similarly, because of the limited scope of the motion for directed verdict in this case, we hold that defendants preserved a challenge only to special and punitive damages under V.R.C.P. 50(b). Since the trial court did not instruct the jury on special damages, however, we will now restrict our review of defendants' motion for judgment notwithstanding the verdict to the issue of punitive damages.

In order to recover punitive damages in this private defamation action, plaintiff must demonstrate malice.[4] *Shortle v. Central Vermont Public Service Corp., supra,* 137 Vt. at 33, 399 A.2d at 518; *Lancour II, supra,* 112 Vt. at 478, 28 A.2d at 401.

██ Since V.R.C.P. 50(b) preserves for review issues of law raised on motion for directed verdict at the close of all the evidence, our review of a motion for judgment notwithstanding the verdict is analogous to that of a motion for a directed ver-

---

[4] Note that the malice here, although similar in effect, is not that required by the First Amendment to the United States Constitution in cases involving public figures. See *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 349–50; *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964); *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc., supra,* 143 Vt. at 72, 461 A.2d at 417; *Burns v. Times Argus Association, Inc.,* 139 Vt. 381, 384, 430 A.2d 773, 774–75 (1981); *Colombo v. Times-Argus Association, supra,* for explanation of malice in the First Amendment context.

dict. We must view the evidence of malice in the light most favorable to the plaintiff and exclude defendants' modifying evidence. Then, if there is evidence which reasonably supports punitive damages, the trial court must submit the issue to the jury. *Senesac* v. *Associates in Obstetrics & Gynecology*, 141 Vt. 310, 312, 449 A.2d 900, 902 (1982). Our review of the record reveals that there was ample evidence for the jury to have found actual malice on the part of the defendants; therefore, in the exercise of its discretion, the jury could have awarded punitive damages. The jury could have concluded that (1) defendants knew that plaintiff had not been fired "for sound business reasons" but had, in fact, voluntarily left, (2) Huntoon said that plaintiff had stolen money and merchandise knowing this to be false, (3) Huntoon knew that plaintiff did not have a "record a mile long," and (4) Huntoon repeated the alleged slanderous statements. *Greenmoss Builders, Inc.* v. *Dun & Bradstreet, Inc., supra*, 143 Vt. at 78, 461 A.2d at 420; *Lancour II, supra*, 112 Vt. at 480, 28 A.2d at 402. Thus, we find no error when the trial court denied defendants' motion for judgment notwithstanding the verdict.

Defendants also moved for a new trial below. V.R.C.P. 59(a). The trial court denied the motion. Defendants face a heavy burden when challenging the trial court's denial of their motion for new trial; we will overturn the court below only when abuse of discretion is shown. *Hoague* v. *Cota*, 140 Vt. 588, 591, 442 A.2d 1282, 1283 (1982). Such abuse will be found only when the trial court has entirely withheld its discretion or where the exercise of its discretion was for clearly untenable reasons or to an extent that is clearly untenable. *Id.* at 595, 442 A.2d at 1285. Accordingly, when reviewing denial of a motion for new trial we will view the evidence in the light most favorable to the verdict and will accord the trial court "all possible presumptive support, similar to the support the trial court owes to a jury verdict." *Gregory* v. *Vermont Traveler, Inc.*, 140 Vt. 119, 121, 435 A.2d 955, 956 (1981).

Once again, our review of the record discloses no abuse of discretion in denying the motion for a new trial. Plaintiff introduced evidence sufficient to make out a prima facie case of defamation. There was ample evidence for the jury to

have found defendants liable for defamation and to support its award of compensatory and punitive damages.

Defendants' motion to set the verdict aside was also denied. Since we recognize that the trial court was better able to determine the question, we indulge every presumption in favor of its ruling. *Greenmoss Builders, Inc.* v. *Dun & Bradstreet, Inc., supra,* 143 Vt. at 78, 461 A.2d at 420. Defendants have failed to show that the trial court's denial of the motion was "clearly untenable," *id.,* and the evidence amply supports the ruling.

Finally, defendants appeal the trial court's denial of their motion for remittitur under V.R.C.P. 59 (a). Remittitur is within the sound discretion of the trial court, and its ruling will not be set aside on appeal absent abuse of discretion. See *Gray* v. *Janicki,* 118 Vt. 49, 52, 99 A.2d 707, 709 (1953). This is also the rule in federal court. 11 C. Wright & A. Miller, Federal Practice and Procedure § 2820, at 132 (1973). Essentially, remittitur is evaluated by whether or not the damages were "manifestly and grossly excessive." See *Pezzano* v. *Bonneau,* 133 Vt. 88, 90–91, 329 A.2d 659, 660 (1974). Unless grossly excessive, this Court will not interfere with an award of damages where exact computation is impossible. *Girroir* v. *Carpenter,* 136 Vt. 290, 292, 388 A.2d 831, 833 (1978) ; *Lancour II, supra,* 112 Vt. at 483, 28 A.2d at 403. This is as true in an action for defamation as in a personal injury case such as *Girroir,* or in an action for trespass, such as *Dean* v. *Arena,* 141 Vt. 647, 650, 450 A.2d 1143, 1145 (1982). In *Lancour II* we observed that "we are bound to indulge every reasonable presumption in favor of the ruling below, bearing in mind that the trial court was in the better position to determine the question." 112 Vt. at 483, 28 A.2d at 403.

As previously noted, the record provides ample basis for both compensatory and punitive damages as awarded by the jury. Thus, the trial court properly exercised its discretion in denying defendants' motion for remittitur. The trial court's instructions to the jury lumped virtually every kind of injury under compensatory damages: injury to reputation, injury to business, humiliation, embarrassment, and mental anguish in both plaintiff's professional and private life. This is permissi-

ble under *Lancour II, supra,* 112 Vt. at 475, 28 A.2d at 399. Defendants did not object to the manner in which the court charged damages and, since we find no glaring error, the court's instructions on damages become the controlling law of the case. *Jackson* v. *Rogers,* 120 Vt. 138, 144, 134 A.2d 620, 623 (1957). Based on the evidence presented at trial, the jury could well have found $15,000 in compensatory damages. There were no interrogatories or special verdicts submitted to the jury, and the record discloses only one line for compensatory damages on the general verdict form. Thus, we will assume the jury considered all forms of injury to the plaintiff as instructed before arriving at the $15,000 figure; we will not speculate as to how much was apportioned by it to each subcategory of compensatory damages. Whether the jury based damages on the written letter together with extrinsic evidence, on the oral statements alone, or on a combination of both, the evidence amply supports the verdict.

In *Kidder* v. *Bacon, supra,* 74 Vt. at 274, 52 A. at 324, we observed that when punitive damages are proper, "the defendant's pecuniary ability may be considered in order to determine what would be a just punishment for him." Under these circumstances, we cannot say as a matter of law that an award of $25,000 in punitive damages against both defendants is manifestly and grossly excessive. The evidence indicates that each defendant had assets far in excess of $25,000. Therefore, we find no abuse of discretion when the trial court denied defendants' motion for remittitur.

*Affirmed.*