## Robert L. Russin v. Heather Wesson, Meredith Manning, Jesse Hanley, Randy Wesson, Scott Wesson, Lisa Fuller and Tamara Blaisdell

[949 A.2d 1019]

No. 06-445

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed March 7, 2008

*James A. Dumont*, Bristol, for Plaintiff-Appellant.

¶ 1. **Reiber, C.J.** Plaintiff Robert Russin appeals from a trial court order finding defendant, his ex-girlfriend, liable for

tortiously converting $45,000 worth of his property but also finding plaintiff liable for $35,000 in defamation damages for telling third parties that defendant was "a thief" and that she had "stolen" from him and "ripped [him] off." We reverse.

¶ 2. The pertinent facts may be briefly recounted. Plaintiff and defendant lived together in a house in Cambridge, Vermont from 1998 until 2005. The house was on the same property as plaintiff's auto-repair business. Their cohabitation ended when defendant obtained an abuse-prevention order against plaintiff in April 2005. Under the terms of the order, plaintiff was required to move out of the house, not come within 500 feet of defendant, and have no contact with defendant or their children. In late April, pursuant to a court order, plaintiff was granted daytime access to the garage on the property, in which his auto-repair business was located. Between April 29 and May 1, plaintiff twice came within 500 feet of defendant in unsuccessful attempts to regain possession of a 2004 Dodge pickup truck. Plaintiff was charged with two counts of violating the abuse-prevention order (VAPO), 13 V.S.A. § 1030, and ultimately pled no contest to one count; the other count was dismissed.

¶ 3. While the VAPO charges were pending, the parties reached a stipulation, which was approved by the family court. Among other things, the stipulation provided that defendant would vacate the house by May 30, 2005 in exchange for $10,000 from plaintiff. Defendant vacated the premises, and plaintiff regained possession of the home before May 30. Upon reentering the house, plaintiff discovered "that the home, as well as the garage and work premises, had been totally cleaned out, down to the bare walls in the house itself," and that "[m]uch of the personal property . . . was also missing." Plaintiff then filed this action in superior court, alleging that defendant had tortiously converted thousands of dollars worth of his personal property when she vacated the home. Defendant counterclaimed for slander, based on her allegation that plaintiff had called her a thief to dozens of townspeople.[*]

¶ 4. The claims were tried to the court over four days, after which the court issued a twenty-four-page decision entering

___

[*] Defendant also claimed that she had an equitable interest in the real property, in plaintiff's auto-repair business, and in various other assets. Those claims are not at issue in this appeal.

judgment for $45,000 on plaintiff's conversion claim, but also entering judgment for defendant for $35,000 on her slander claim and $10,000 on her claim for reimbursement of certain contributions she had made to plaintiff's real property. Defendant was also ordered to return four named vehicles and associated parts to plaintiff, and to make reasonable efforts to allow third parties to retrieve personal property she had allegedly stored in a family member's barn. Plaintiff appeals from the slander judgment only; defendant did not file a brief in this Court. We review the trial court's legal conclusions under a nondeferential and plenary standard, and its findings of fact for clear error. *Clayton v. Clayton Invs., Inc.*, 2007 VT 38A, ¶ 9, 182 Vt. 541, 929 A.2d 713 (mem.).

■ ■ ¶ 5. We articulated the familiar elements of defamation, which comprises libel and slander, in *Lent v. Huntoon*:

(1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages.

143 Vt. 539, 546-47, 470 A.2d 1162, 1168 (1983) (footnote omitted). Truth is a complete defense to defamation. *Id.* at 548, 470 A.2d at 1169; *Lancour v. Herald & Globe Ass'n*, 111 Vt. 371, 379, 17 A.2d 253, 256 (1941).

¶ 6. Plaintiff contends that the trial court erred in finding that his statements about defendant were not true. On this point, the trial court found as follows:

While Plaintiff has established that Defendant tortiously converted at least some items of his business and personal property, . . . it is quite a different matter to charge her with being "a thief" and committing the crime of unlawfully stealing his property. Inasmuch as [plaintiff] has not, and cannot establish that Defendant acted with the necessary *mens rea* — i.e., some guilty knowledge or intent . . . — he cannot prove the absolute defense of truth as to those statements he did repeatedly make. Additionally, he admitted that he essentially had "no basis" for the stealing charges . . . and that he

wanted others in the community to think that she was "a thief."

Based on these findings, the court concluded that defendant had proven that plaintiff's statements were in fact false.

¶ 7. The slander judgment was premised on the legal conclusion that plaintiff's statement that defendant was "a thief" was false unless plaintiff could show that defendant's actions met all of the legal requirements of criminal larceny. See 13 V.S.A. §§ 2501-2502. In particular, as reflected in the language quoted above, the court concluded that plaintiff's defense of truth failed because he could not show that defendant acted with the requisite criminal intent. See *State v. Reed*, 127 Vt. 532, 538, 253 A.2d 227, 231 (1969) (conviction for larceny requires proof of wrongful taking with intent to keep). The trial court cited no authority for this proposition, and none of our defamation cases support it, although there are cases from other jurisdictions that do. See, e.g., *Auto West, Inc. v. Baggs*, 678 P.2d 286, 291 (Utah 1984). The *Baggs* court concluded that a statement that a business associate had stolen or embezzled from a car dealership was not substantially true because there was some evidence to support a conclusion that the defamed party intended to return the money. *Id.* We do not believe that the *Baggs* approach adequately accounts, in a private-party case like this, for the important free-speech interests at stake. Instead, we believe that statements such as plaintiff's — which did not state that defendant had been convicted of a crime, but only that, in his opinion, she had wrongfully taken his property — should be judged using the common-sense "substantial truth" standard from our prior defamation cases.

¶ 8. Under that standard, "[f]or the defense of truth to apply, 'it is now generally agreed that it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true.' " *Weisburgh v. Mahady*, 147 Vt. 70, 73, 511 A.2d 304, 306 (1986) (quoting W. Prosser & W. Keeton, The Law of Torts § 116, at 842 (1984) (footnotes omitted)). Put another way, " 'it is sufficient if the substance, the gist, the sting, of the matter is true.' " 4 J. Lee & B. Lindahl, Modern Tort Law: Liability & Litigation § 36:23, at 36-37 (2003) (quoting *Gomba v. McLaughlin*, 504 P.2d 337, 339 (Colo. 1972)). The inquiry is "whether the [alleged defamatory] statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter." *Id.*

¶ 9. A common factual predicate in defamation cases is a legally mistaken but substantially accurate statement. "For example, where the defendant newspaper reported that the plaintiff was convicted of stalking, rather than [the actual conviction for] harassment, the report was held to be substantially true." *Id.* at 36-38 (citing *Barnett v. Denver Publ'g Co.*, 36 P.3d 145, 148-49 (Colo. Ct. App. 2001)). Similarly, a leading treatise has this to say: "Statements about crimes are often technically incorrect but substantially true. To laypersons, 'theft' may mean any wrongful taking, including such distinct crimes as embezzlement." 2 D. Dobbs, The Law of Torts § 410, at 1148 (2001). The common thread in these examples is that the mistaken statement has the same effect as a perfectly accurate statement of the true facts.

¶ 10. Although among legal practitioners the terms "steal," "thief," and "theft" have unambiguously criminal connotations, they are more broadly defined in lay usage. Compare Black's Law Dictionary 1453, 1516, 1517 (8th ed. 2004), with Webster's New University Dictionary 1134, 1202 (2d ed. 1984) (defining "steal" as "to take (the property of another) without right or permission" and "thief" as "[o]ne who steals"). Webster's also defines "rip-off" as a "theft." *Id.* at 1013. These lay definitions are quite similar to the definition of tortious conversion employed by the trial court: "that [a party] has appropriated . . . property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title."

¶ 11. Under similar circumstances, other courts have concluded that the "sting" of an imputation of a crime was no worse than the sting of the civil truth. See, e.g., *Sivulich v. Howard Publ'ns, Inc.*, 466 N.E.2d 1218, 1220 (Ill. App. Ct. 1984) (statement in newspaper that "[c]harges of aggravated battery have been filed" was substantially true although in fact only a civil suit had been instituted); see also *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1073-74 (5th Cir. 1987) (collecting cases). Similarly, some courts have simply applied the generic substantial-truth rule to statements imputing one crime, when the truth was that a different but similar crime was committed or charged. See, e.g., *Barnett*, 36 P.3d at 148 ("Although there is a distinction between harassment, which is a misdemeanor, and stalking, which is now a felony, both terms describe similar repeated, unsolicited behavior.").

¶ 12. Here, the trial court explicitly found that defendant had tortiously converted more than $45,000 of plaintiff's property. See *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 299-301, 629 A.2d 325, 328-30 (1993) (defining conversion and explaining that intent is not a prerequisite for liability). As noted *supra*, ¶ 10, the everyday definitions of the terms plaintiff used to describe defendant's actions are substantially the same as the legal definition of tortious conversion. Certainly, they are similar enough that the "sting" of the tortious truth would not have been any less than the off-the-cuff accusations of "theft" or "stealing." It cannot be the law that a private party is liable in defamation to a converter for calling her a "thief" or stating that she "ripped [him] off" or "stole" his property. Such statements were substantially true under *Weisburgh*. The trial court's finding that they were not was clearly erroneous and must be reversed.

*The slander judgment is reversed, and the slander award is vacated.*