GRAND CENTRAL PLAZA, INC., Respondent, v JOHN D. BUSSEL et al., Appellants.—Mahoney, P. J.

In 1957, Tulip Realty Company of Florida, Inc., entered into a contract to acquire a 10-acre tract of land in St. Petersburg, Florida. Though called a lease, the agreement was essentially an installment purchase contract, and after the 25-year period of the contract expired on October 31, 1982, Tulip could purchase the parcel for $1. Further, Tulip could purchase the property at various times during the contract period according to varying price formulae.

On August 1, 1961, Tulip entered into an agreement with an entity that became known as Towers Properties of St. Petersburg, Inc., whereby Towers leased a two-acre portion of the tract known as "parcel A" from Tulip. Powers was to construct a retail discount department store on parcel A, and Tulip was going to construct a retail shopping center and parking lot on the remaining eight-acre tract known as "parcel B". Since there was only enough room for limited parking on parcel A, the lease provided the tenant with a nonexclusive easement for the use of the parking lot on parcel B by customers of the store on parcel A. The lease also obligated the tenant to pay certain common charges incident to the maintenance of the shopping center. The lease was to expire on October 30, 1982 and it contained an option to purchase parcel A, exercisable by the tenant 12 months prior to the termination date.

Towers constructed a retail discount department store on parcel A after, by virtue of a sale/leaseback agreement, selling its leasehold interest to defendants and then subleasing it back from them. Towers occupied the department store pursuant to the sublease for about 1½ years until it went bankrupt. Food Fair, Inc., with which Tulip had merged in 1964, exercised its option under the lease agreement with Towers to lease the department store if it became vacant. Accordingly, on October 25, 1965, defendants, as owners of the leasehold interest of Towers, subleased the premises to J. M. Fields of East Florida, Inc., an affiliate of Food Fair.

In 1979, Food Fair and its subsidiaries and affiliates, including J. M. Fields, filed petitions in bankruptcy. On May 22, 1979, Food Fair acquired title to parcels A and B pursuant to a deed given by the bankruptcy trustee. Also, the bankruptcy trustee sold the sublease of J. M. Fields to K-Mart Corporation. Thereafter, the bankruptcy trustee sold parcels A and B to Grand Union Company.

On February 9, 1981, defendants exercised their option to purchase parcel A under the terms of the August 1961 lease.

In January 1984 plaintiff purchased parcel B. The primary dispute is whether defendants may use the parking lot on parcel B for customer parking. Plaintiff maintains that the easement contained in the August 1961 lease terminated when the lease expired on October 31, 1982. Defendants counter that the option to purchase concerned the premises as described in the lease, including the easement for parking.

Plaintiff commenced this declaratory judgment action seeking a determination that defendants are not entitled to the parking easement and that defendants are obligated to pay certain charges attributable to the maintenance of the shopping center. Defendants counterclaimed for relief in their favor. After a trial, Supreme Court granted plaintiff's motion for a directed verdict on its complaint. Defendants appeal.

Clearly, the lease provided the lessee of parcel A with a nonexclusive easement to use parking facilities on parcel B. The issue is whether such right was intended to be transferred to the lessee along with parcel A in the event the lessee exercised the option to purchase said parcel. The lease expressly makes Florida law applicable to the interpretations of it. Under Florida law, an express easement may be created in favor of a leasehold by appropriate provision in the lease agreement (see, Hynes v City of Lakeland, 451 So 2d 505, 510 [Fla]). Where an express easement is created, but the language creating it is ambiguous concerning the nature and extent of the easement, resort to the parties' intention is appropriate to aid in construction (see, supra, at 511). Such intention may be ascertained by reference to: "the conditions and purposes for which the easement was intended", "the situation of the parties and the property, the circumstances at the time the instrument is executed, the practical construction as evidenced by the conduct and admissions of the parties themselves, and by the single 'contemporary useage with respect to the subject granted' " (supra, at 511, quoting Kingdon v Walker, 156 So 2d 208, 213 [Fla]).

Here, the lease, which was negotiated in 1961 between corporations which no longer exist, gives the tenant the right to purchase the "demised premises", but fails to specify what precisely was meant by such term. Examining the circumstances attending the execution of the lease, parcels A and B comprise a small shopping center. Parcel B consists of a grocery store, several smaller stores and a large parking lot. Parcel A consists of a retail discount department store which is connected to the stores on parcel B by a common walkway. Parcel A contains very little parking. The lease includes

rights and obligations of the tenant and landlord regarding ingress and egress from common areas, maintenance, lighting and garbage removal, as well as restrictions on the type of business to be carried on by the tenant and limitations on competition by the other stores in the shopping center. It is apparent that in 1961 the parties intended that parcels A and B be operated, to outward appearances, as one integral shopping center. One important aspect of such concept is common parking for the customers of all of the stores. Further, it is clear that, without the parking easement, parcel A, as it exists, is virtually worthless. Defendants cannot possibly operate a retail department store without parking. If the parking easement is not to be considered part of the "demised premises", the exercise of the option to purchase could be a meaningless, and costly, gesture were the owner of parcel B to refuse to convey an easement for parking. This could not have been the intent of the parties in 1961. The parking easement was a crucial component of the leasehold and was part of the demised premises which defendants obtained when they exercised their option to purchase.

Next, the parties disputed the extent of defendants' share of maintenance expenses. Under the lease, defendants were obligated to pay to plaintiff 42.68% of the common area maintenance expenses (representing parcel A's portion of square footage in the shopping center). Supreme Court held that real estate taxes and administrative costs were included in common area maintenance expenses. The lease does not define what is included in common area maintenance expenses, but the section of the lease at issue refers to "striping [sic], lighting, cleaning, premiums on insurance policies, sewerage and garbage disposal of common facilities, exterminating, policing and *maintenance* of the parking area, walks and ways, and for areas common to all occupants of the Shopping Center, as may be necessary from time to time" (emphasis supplied).

In our view, the common understanding of the phrase "maintenance of the parking area, walks and ways" would not include real estate taxes and administrative costs. Supreme Court's inclusion of real estate taxes and administrative costs appears to derive from the construction of an easement agreement which plaintiff and defendants attempted to negotiate prior to this action. However, this agreement was never executed and its provisions are not relevant in determining defendants' obligations under the 1961 lease. Thus, defendants are entitled to a declaration that their proportionate share of

expenses does not include real estate taxes or administrative costs.

Judgment reversed, on the law, with costs, and it is declared that (1) defendants, by their exercise of the purchase option, acquired a nonexclusive easement over parcel B for parking to last so long as a retail discount department store is operated on parcel A and (2) defendants' obligation to pay a proportionate share of common area maintenance expenses does not include real estate taxes or administrative expenses. Mahoney, P. J., Weiss, Levine, Harvey and Mercure, JJ., concur.