2007 VT 38A

### Steven C. CLAYTON v. CLAYTON INVESTMENTS, INC.

[929 A.2d 713]

No. 06-093

¶ 1. June 13, 2007. Defendant, Clayton Investments, Inc., appeals a decision of the superior court that deeds offered by it to plaintiff, Steven Clayton, failed to comply with the parties' option-to-purchase agreement. Defendant contends the court "re-wrote" the option by invalidating parking restrictions and a provision for common area maintenance (CAM) fees in its suggested deeds. Defendant further contends the court erroneously failed to address its claim for past-due CAM fees, raised for the first time at trial. We modify the decision of the superior court and, as modified, affirm it.

¶ 2. The facts of this family property dispute are as follows. Defendant is owned by Harry and Lucille Clayton and four of their five children. Plaintiff is the fifth child of Harry and Lucille, and is the only child not to hold stock in the family business. Defendant owns the Shelburne Shopping Park in Shelburne, Vermont, which is home to the Shelburne Supermarket, among other businesses. Harry and Lucille were part-owners of the supermarket business until they sold their shares to plaintiff, who now holds the majority of shares. The supermarket building is located on Lot 8 of the shopping park. In 1983, defendant, then known as Clayton Realty Inc., sold the supermarket building to plaintiff. This conveyance was part of a series in which defendant conveyed a building in the shopping park to each of the Clayton children. Each deed for a building was substantially identical to the others. Each deed contained a requirement that the purchaser pay CAM fees according to a specified allocation formula based on the amount of occupied first floor space in the building. It also contained a noncompetition covenant.

¶ 3. In addition to conveying the supermarket building, defendant leased to plaintiff Lot 8, the lot underlying the building, starting in 1983. Defendant also leased to the supermarket twenty parking places in the shopping park.

¶ 4. In 1997, the parties entered into an option-to-purchase agreement under which plaintiff could buy Lot 8 at a set price when the lease expired on December 31, 2004. The lease described the property subject to the option as Lot 8 and "[n]on-exclusive easements over the common areas and driveways of the Shelburne Shopping Center, for purposes of vehicular and pedestrian access and egress and utility services." The option did not specifically include the parking spaces that were the subject of the separate lease. It did not mention CAM fees. It specified that if plaintiff exercised the option, defendant had to provide "a good and sufficient warranty deed . . . conveying a good and clear, record and marketable title . . . and in fact, free from all defects, liens, and encumbrances." The option went on to state that title would not be deemed "good and clear, record and marketable, if Seller ha[d] not obtained all state and local subdivision, zoning, and land use permits required for the conveyance."

¶ 5. This dispute arose when plaintiff attempted to exercise the option. Plaintiff informed defendant in writing of his intent to purchase Lot 8 in November 2004 pursuant to the terms of the agreement. Defendant subsequently offered two deeds to the property which contained, among other things, a provision forbidding parking in the common areas of the shopping park and a provision requiring the payment of CAM fees. Plaintiff refused the deeds and proposed his own without the offending provisions on park-

ing or CAM fees, which defendant rejected. Eventually, defendant wrote to plaintiff in June 2005 stating that it considered his option to have expired and ordered that he quit possession of Lot 8. Plaintiff, in response, filed a complaint and motion for a restraining order in superior court. The case culminated in a bench trial in which the court held that the deeds tendered by defendant did not comply with the terms of the option. The court concluded that (1) the attempted parking restriction was not permitted by either the option or the original subdivision permit for the shopping park discussed below, and (2) the CAM fees were not required by these documents, and were already provided for in the supermarket building deed. It therefore ordered defendant to execute a deed to Lot 8 without the provisions. This appeal followed.

¶ 6. The parties' claims are based primarily on two documents. The first is the option agreement, which plaintiff argues requires defendant to provide parking spaces; defendant disputes this claim. The second is the nine-lot subdivision permit granted by the Town of Shelburne for the shopping park in 1983. Defendant argues that this permit requires that any deed to Lot 8 must contain a provision imposing CAM fees; plaintiff disputes this construction of the permit and the notion that the permit conditions must be in the deed.

¶ 7. Additional facts about the subdivision permit are necessary to understand the claims. The final approval for this permit included a provision for "Covenants or Deed Restrictions" for "Maintenance" and "Non-competition." A letter from Harry Clayton to the Shelburne Planning Commission contained "proposed covenants and/or deed restrictions" for the shopping park; the wording is exactly that which appeared in the building deeds discussed above. As for parking, the final subdivision approval identi-

fied over eight acres in the shopping park as "Common Space for parking" and stated: "Parking area shown on Plan (Clayton Investments and Clayton Realty Inc.) to be left open for parking; to be maintained by owner."

¶ 8. Defendant makes two assertions on appeal: (1) that its proffered deeds not only comply with, but are compelled by, the subdivision permit, and (2) that the trial court erred in failing to allow defendant to assert a claim for past-due CAM fees at trial. We address each in turn.

¶ 9. Our standard of review is two-tiered. We are deferential to a trial court's findings of fact and will reject them only if they are clearly erroneous; conclusions of law, on the other hand, are reviewed de novo, and will be upheld only if reasonably supported by the findings. *Luneau v. Peerless Ins. Co.*, 170 Vt. 442, 444-45, 750 A.2d 1031, 1033 (2000).

¶ 10. We begin with the option, its relationship to the permit, and its conditions. For both issues in which defendant added deed language — CAM fees and parking — the option agreement does not explicitly resolve the dispute. That is, the option does not specify that plaintiff must pay CAM fees or that plaintiff must have the right to use the common area parking spaces for supermarket customers. Instead of the option, the parties rely on the description and conditions in the subdivision permit because the definition of marketable title in the option requires compliance with permit conditions.

¶ 11. First, with respect to CAM fees, defendant argues that any deed must contain plaintiff's obligation to pay CAM fees because the permit approval requires a condition on maintenance and that brief description is based on a proposed condition that its predecessor provided to the Town of Shelburne on CAM fees. See *New Eng. Fed. Credit Union v. Stewart Title Guar. Co.*, 171 Vt. 326, 330-31, 765 A.2d 450, 453 (2000) (parties may define encumbrance on title as compliance with

state subdivision regulations under terms of contract). It argues that this result is commanded in any event by the holding of *Bianchi v. Lorenz* that, in certain circumstances, the sale of property in violation of zoning laws violates the covenant against encumbrances in a warranty deed. 166 Vt. 555, 558, 701 A.2d 1037, 1039 (1997), *superseded by statute*, 27 V.S.A. § 612, *as recognized in New Eng. Fed. Credit Union*, 171 Vt. at 332 n.4, 765 A.2d at 454 n.4.

¶ 12. We note at the outset that *Bianchi* and the cases on which it relies involved a buyer who claimed that the seller failed to provide marketable title. Here the seller is arguing, *over the objection of the buyer*, that it must include a provision that benefits the seller in the deed to provide marketable title. We conclude that defendant's argument goes too far. The marketable title provision in the option is inserted for the benefit of the buyer, not the seller, and cannot be used to advance the interests of the seller against the wishes and interests of the buyer. If the buyer is satisfied that it has received marketable title without the offending deed restriction, the inquiry ends.[1]

¶ 13. Even if defendant could rely on the subdivision permit condition, its argument on this point fails because it is not supported by the permit language. The permit condition, if it can be called that, is one word: "maintenance." Defendant acknowledges that the condition lacks specificity, but argues that the specificity is supplied by its proposal to the Shelburne Planning Commission, which included the CAM fee language that ended up in the building deed. We cannot agree that this single word imposes the CAM fee requirement. Permit conditions must be

explicit and "must be expressed with sufficient clarity to give notice of the limitations on the use of the land." *In re Farrell & Desautels, Inc.*, 135 Vt. 614, 617, 383 A.2d 619, 621 (1978). A zoning board may impose a condition that a developer complete its project in compliance with its submission to the board. *In re Kostenblatt*, 161 Vt. 292, 299, 640 A.2d 39, 44 (1994). In the absence of such an explicit requirement, we must look solely to the permit conditions as written. *Id.* We have applied *Kostenblatt* to subdivision permits. *In re Stowe Club Highlands*, 164 Vt. 272, 276, 668 A.2d 1271, 1275 (1995). In this case, the permit does not require the permit holder to comply with the content of its proposal generally, and it does not impose a clear, specific requirement that lot owners pay CAM fees to defendant. Indeed, to the extent the permit language is explicit, it imposes the maintenance obligation on defendant. Defendant cannot rely on the permit to place the CAM fee provision in the deed to plaintiff.

¶ 14. The situation with respect to parking is essentially reversed. Again, the option fails to specify that parking is included. In adding specific language to the deed that parking is not included, defendant claims that it has a right to clarify the deed description. Plaintiff argues, however, that the Shelburne subdivision permit requires that supermarket patrons be allowed to use common area parking. The permit language does require that the common area "be left open for parking," but provides no specificity about the arrangement between defendant and the building owners. As defendant argues, this omission is to be expected because the whole shopping center, including all the buildings, was in common ownership at the time the permit was issued.

¶ 15. We reemphasize, as noted above, that permit restrictions must be expressed with "sufficient clarity to give

_____
[1] If it turns out that the buyer does not have marketable title for lack of CAM obligations in the deed, at the buyer's insistence, then he has made his own bed and cannot be heard to complain later.

notice of the limitations on the use of the land." *In re Farrell & Desautels*, 135 Vt. at 617, 383 A.2d at 621. We cannot find sufficient clarity in support of plaintiff's position here. The language of the permit can be seen as a restriction on the use of the common area — it must be used for parking — but not as an entitlement for each lot owner to obtain a right to parking as part of the lot deed. There are many ways for a shopping center to structure rights to use parking, and many possible arrangements between the owner of the parking lot and the owners of the buildings. This is shown by the arrangement at the time of the exercise of the option under which plaintiff leased a specific number of spaces from defendant.

¶ 16. The superior court stated, as its primary holding, that "[o]bviously, the [permit] is based on the assumption that the common parking areas will be available to owners and customers of all the buildings on all the lots in the Shopping Park." We do not think that an "assumption" meets our standard for the specificity of permit restrictions.

¶ 17. The superior court agreed with plaintiff on an additional rationale. Both the deed tendered by defendant, and that tendered by plaintiff, contained standard language that the deed conveyed the property "with all the privileges and appurtenances thereof." The court held that under this language "the use of the parking areas in common with other lot owners is included in the grant of the deed."

¶ 18. In *Swazey v. Brooks*, this Court described the scope of an appurtenance as follows:

> We think that the word *appurtenances* in the *habendum* of the defendant's deed has its full force and application when it is confined to existing rights which naturally and necessarily belonged to the thing granted in the hands of the grantor, and

that it ought not to be extended so as to carry an easement in other land, which, by reason of not having ripened into a legal right, had not become legally attached to the premises conveyed, unless accompanied by proper words describing it, and showing the intention of the grantor to pass it.

34 Vt. 451, 454 (1861); see *Cole v. Haynes*, 22 Vt. 588, 590 (1849) ("Land does not pass as a mere appurtenance to other land; and, consequently, no portion of the highway, or stream, will be conveyed, unless the instrument of conveyance can, by reasonable construction, be made to include it."); see also *Humphreys v. McKissock*, 140 U.S. 304, 314 (1891) (land cannot be appurtenant to other land, and "[a]ll that can be reasonably claimed, is that the word 'appurtenances' will carry with it *easements* and *servitudes* used and enjoyed with the lands for whose benefit they were created"). On the other hand, we recognize, consistent with other courts that have addressed the issue, that "[s]hopping centers exist because of an abundance of parking area and ease of access from and to the same. Deny either parking or access thereto and they cease to exist as a viable entity." *Joseph v. Hustad Corp.*, 454 P.2d 916, 918 (Mont. 1969). A good example of the reconciliation of these principles is *Grand Central Plaza, Inc. v. Bussel*, 528 N.Y.S.2d 726, 728 (App. Div. 1988). That case is otherwise identical to this one except that the lease there included an easement to use common area parking. On that basis, the court held that the option impliedly included an easement for parking. *Id.* In comparison, the evidence here is that the preexisting lease to Lot 8 did not include an express right to common area parking.

¶ 19. We cannot accept, based on the record before us, that the appurtenance clause necessarily gave plaintiff an ease-

ment over the parking area with no further contribution. We find, however, that the court's decision on parking was not necessary to decide the narrow question before it. Like the option agreement to which it must conform, see *Buchannon v. Billings*, 127 Vt. 69, 75, 238 A.2d 638, 642 (1968), the deed tendered by plaintiff contained no mention of parking. Thus, the deed was fully consistent with the option, and the court acted properly to accept it.

¶ 20. The evidence in this case cautioned against going further on the parking controversy. It disclosed that there is other litigation between defendant and the supermarket over parking rights. Thus, the court could not determine whether providing parking was necessary to enable plaintiff to use his land and building as a supermarket. In the absence of further evidence, the court acted within its discretion in refusing to accept defendant's additional language that the deed provided no right to parking. That issue could be determined in the other litigation before the court. Thus, we affirm the order of the court granting plaintiff specific performance of the option, and its specific order that defendant execute a deed in the form tendered by plaintiff. We strike, however, the court's findings and conclusions that plaintiff has necessarily acquired the right for his supermarket patrons to use any space within the common area parking lot.

¶ 21. Defendant's final issue relates to a stipulation the parties entered into early in the litigation. Plaintiff initially sought a restraining order because defendant had taken the position that the option had been extinguished by plaintiff's failure to accept the tendered deeds and that plaintiff was a holdover tenant who would be evicted. During the course of the argument over the restraining order, defendant claimed that plaintiff had failed to pay CAM fees pursuant to the formula in the building deed. Under the stipulation, defendant withdrew its demand that plaintiff quit the premises pending the deed litigation and plaintiff agreed to make certain payments for past due CAM fees and certain payments the purpose of which would be resolved in the future. The stipulation was signed by the superior judge as an order. Shortly thereafter, defendant filed an answer to plaintiff's complaint and a counterclaim. The counterclaim related only to the deed controversy and not to the allegedly unpaid CAM fees.

¶ 22. During the trial, defendant sought to introduce evidence of plaintiff's failure to pay the CAM fees due under the building deed, including the amount ordered to be paid in the stipulated order. Plaintiff successfully kept the evidence out on the basis that defendant's counterclaim did not include a demand for the unpaid fees. In its decision, the superior court ruled that because defendant had not pled a claim for breach of the CAM fee provision of the building deed, it could not recover unpaid CAM fees and all fees paid by plaintiff pursuant to the stipulation would be credited to the purchase price for the land.

¶ 23. On appeal, defendant argues that the superior court erred by not including the terms of the stipulated order in the final judgment. This argument reflects the state of the trial court record as of the date that defendant filed its notice of appeal. After defendant filed a notice of appeal, however, defendant changed its approach and filed a motion to enforce the terms of the stipulated order. Over plaintiff's objections that: (1) defendant was precluded from raising enforcement of the stipulated order by failing to include such a claim in the counterclaim and (2) the court lacked jurisdiction because of the appeal, the court found that the issue was properly before it and set the matter for an evidentiary hearing. Apparently, the holding of the evidentiary hearing has been delayed for discovery.

¶ 24. The stipulated order gave defendant a judgment for at least part of the CAM fees, exactly the result defendant sought. Thus, its failure to include in its counterclaim a claim on which it already held a judgment is of no consequence. Since the judgment had already issued, we see no reason why defendant could not move to enforce it in this case. The effect of defendant's action, however, is that the court's decision on appeal is not a final judgment with respect to the collection of CAM fees and is not properly before us. To ensure, however, that the order of the superior court is not considered a final judgment on this issue, we strike paragraphs four and five[2] of the conclusions of law and order. On remand, the superior court can consider whether to reinstate these paragraphs in resolving the motion to enforce the stipulated order. Because the issue of collection of the CAM fees remains before the superior court, we decline to reach it on appeal.

*Affirmed, except that finding five, the last two paragraphs of the "Discussion," and paragraphs four and five of the superior court's conclusions of law and order are stricken.*

---

[2] Paragraph four states that there is no claim in the case as to breaches of the building deed provision with respect to CAM fees. There was, of course, such a claim in the argument over the stipulation, and the claim was resolved by the judgment of the court. Paragraph five states that all payments plaintiff made under the stipulated order shall be applied to the purchase price of the property. The extent to which money paid by plaintiff should be credited to overdue CAM fees or alternatively to the purchase price is exactly what will be litigated in the enforcement hearing.