STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 41-3-19 Vtec |

| | |
|---|---|
| Midway Charters Ventures, LLC | DECISION ON MOTION |

In 2018, Midway Charter Ventures, LLC, ("Midway") took ownership of the historic "Burklyn Manor," so called because it straddles the boundary separating the Towns of Burke and Lyndon, Vermont. Burklyn Manor sits on 86 acres comprised of four separate parcels in both Burke and Lyndon, with an address of 2864 Darling Hill Road, Burke, Vermont ("the Property"). The Property also contains multiple historic barns and out-buildings. On October 10, 2018, Midway received a conditional use permit from the Town of Burke Development Review Board ("DRB") to operate Burklyn Manor as an inn. That permit was not appealed.

Midway now seeks permit approval to convert the wagon barn on the Property into a caretaker's cottage and the carriage barn into a tap house that serves food and alcohol to both inn guests and the general public.[1] A group of nearby property owners ("Neighbors") appealed the DRB's decision to approve Midway's second permit.[2] Presently before the Court is Neighbors' motion for partial summary judgment.

Attorney Nicholas A.E. Low represents Neighbors collectively. Attorneys Philip H. Zalinger, Jr., and Stephen L. Cusick represent Midway.

---

[1] There appears to be some confusion regarding the identity of the barns that Midway proposes to convert. We base the above characterization of the barns on the partial site plan Midway submitted with its request for an Act 250 jurisdictional opinion from the District #7 Environmental Commission. (This plan also makes up part of the record of the present appeal.) For clarity and consistency's sake, we ask that the parties also adopt this characterization as this matter proceeds, or notify the Court if our impression is mistaken.

[2] Neighbors are Richard Woodworth, Veronica Woodworth, Kimberly Patsos, William Patsos, and Tabitha Bowling. While Ms. Bowling filed her Notice of Appeal separately from the others, Attorney Low represents them all and they have since signed on to each filing as a group.

**Legal Standard**

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. V.R.C.P. 56(a). Parties must support any assertions of material fact with affidavits or other admissible evidentiary material. V.R.C.P. 56(c); White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999). When considering the facts asserted, this Court affords the non-moving party the benefit of all reasonable doubts and inferences. In re Mayo Health Care, Inc., 2003 VT 69, ¶ 3, 175 Vt. 605 (citing Samplid Enters. v. First Vt. Bank, 165 Vt. 22, 25 (1996)). Further, pursuant to V.R.C.P. 56(c)(3), "the court need consider only the materials cited in the required statements of fact, but it may consider other materials in the record."

**Factual Background**

We state the following facts in order to set out the relevant procedural background and to decide the present motion for summary judgment. These are not factual findings, which can only be reached after a trial. See Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993)).

1.      The Property consists of four contiguous parcels of land totaling 86 acres. Two of these parcels are located in the Town of Burke, Vermont, and the other two parcels sit within the Town of Lyndon, Vermont.

2.      The Burke portion of the Property relevant to this appeal is located in Burke's Agricultural-Residential II District ("AR II District").

3.      The large and historic Burklyn Manor is bisected by the town line, with half of the structure in Burke and the other half in Lyndon.

4.      The Property also contains a number of out-buildings that supported the Manor historically, including the carriage barn and wagon barn relevant to this appeal.

5.      The carriage and wagon barns are both sited on the part of the Property located in Burke's AR II District.

*The 2018 Inn Permit*

6.      In September 2018, Midway applied for a permit to operate Burklyn Manor as an inn as defined in Article 10 of the Town of Burke Zoning and Subdivision Bylaw ("Bylaw").

7. In the narrative portion of its conditional use application, Midway stated its intent to "sell and serve alcoholic beverages on the property" and to "have a chef to provide meals and food service . . . ."

8. Midway also noted that its "[p]lans to convert the [] barn to a care takers residents [sic] is in the planning stage . . . .  That will come under [a] separate permit when that need arises."

9. The DRB approved Midway's inn permit on October 10, 2018 ("2018 Inn Permit"). Relevant here, the decision on the 2018 Inn Permit states as a finding of fact that "there is a restaurant on the property but [it] will not be opened to the public.  Only the guests at the Inn and private functions."

10. The DRB also attached the following condition to the 2018 Inn Permit: "If in the future [Midway] decide[s] to open the restaurant [to the public] they must come back to the Development Review Board for a change of use permit."

11. The DRB decision issuing the 2018 Inn Permit did not mention the existing wagon barn or the proposed caretaker's cottage.

12. The 2018 Inn Permit was not appealed.

*The Present Application*

13. Midway submitted the application presently on appeal on January 21, 2019.  The application proposes to convert the existing barns into a "tap house and residence for caretakers/owners home."

14. The application and accompanying site plans alternatively refer to the tap house as "Elmers Restaurant and Pub" and "Elmer's at Burklyn."  The plans call the caretaker's quarters "Burklyn cottage" or simply "cottage."

15. The two barns would be painted, renovated, and restored to support the proposed uses while maintaining their historical appearance.

16. The cottage contains two bedrooms, a kitchen, and one-and-a-half bathrooms.

17. In a February 13, 2019 decision, the DRB granted Midway a permit to convert the carriage barn into a tap house and the wagon barn into a caretaker's cottage.

18. Neighbors timely appealed the DRB's February 13, 2019 decision to this Court.

**Discussion**

Neighbors move for summary judgment on Questions 1 through 6 of their Statement of Questions. Questions 1 and 2 generally ask whether Midway's application for the tap house should be denied. Neighbors assert that the tap house is a bar, tavern, or restaurant under the Bylaw and therefore does not qualify as a permitted or conditional use in the AR II District.

Questions 3 to 6 ask whether the application for the caretaker's cottage should be denied, on the grounds that the cottage is either not an allowed use in the AR II District, or the cottage qualifies as a single-unit dwelling under the Bylaw that cannot be sited on a lot with another principal use, such as the inn.

Inherent to these Questions is the assertion that the tap house and cottage cannot properly be considered part of the permitted inn. In their motion for summary judgment, Neighbors argue that the tap house and cottage are uses of the Property separate from the inn use that must be considered independently of the inn.

Neighbors' Questions 7 through 13 relate to the proposal's compliance with specific substantive standards in the Bylaw. As stated, Neighbors do not move for summary judgment on their remaining Questions. See V.R.C.P. 56(a) (providing for partial summary judgment).

As a preliminary matter, we also note that the parties agree that the 2018 Inn Permit became final and binding pursuant to 24 V.S.A. § 4472 when it was not appealed. The contents of that permit are not at issue and cannot be collaterally attacked in this proceeding. 24 V.S.A. § 4472(d). Thus, the issue before the Court is whether, given the 2018 Inn Permit, the tap house and caretaker's cottage are uses the Bylaw allows in the AR II District. To resolve this issue, we consider the tap house and caretaker's cottage separately under the Bylaw, though they come before us as part of a single application. We consider the proposed caretaker's cottage first.

I. **Whether the proposed caretaker's cottage is permittable in the AR II District.**

Midway asserts that the caretaker's cottage should be considered part of the inn use. Neighbors assert that the cottage is a single-unit dwelling under the Bylaw, not part of the inn.

Neighbors offer that under the Bylaw a single-unit dwelling cannot be placed on a lot that has a different principal use, like the inn.[3]

To answer this question, we begin with the Bylaw. When interpreting a municipal ordinance, as with a statute, we begin with the plain language of the relevant provisions. In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 22, 199 Vt. 19 (citing Evans v. Cote, 2014 VT 104, ¶ 13, 197 Vt. 523). The Court endeavors to give effect to "the whole and every part" of the ordinance, approaching the ordinance as a unified system of regulation. Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 20, 194 Vt. 12 (citation omitted). If the regulatory language is ambiguous, we resort to other tools of interpretation. In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 20, 206 Vt. 302.

Under the Bylaw, an inn is defined as:

> A building or group of buildings on a single parcel which contains fewer than twenty-five (25) guest rooms which are rented out to provide overnight accommodations to transient travelers on a short-term basis, and which may offer dining facilities.

Bylaw Art. 10.

The Bylaw definition provides for guest rooms and the option of a dining facility. It does not provide for staff quarters housed in individual structures. Thus, we conclude that the plain definition of an inn does not include caretaker's quarters housed in an independent structure.

In addition, if characterized as a single-unit dwelling, the cottage could not share a lot with another principal use like the inn. See Bylaw § 301(2) ("A lot with a single-unit dwelling shall contain no other uses than accessory uses.") While the Property consists of four separate parcels, and the cottage as proposed sits on a different parcel than the inn building, Midway proposes to extend the inn use to the cottage's parcel by also establishing the tap house on that parcel.

While these two routes to a permit appear closed, Midway alludes to a third potential classification for the cottage in its response to Neighbors' motion. Midway refers to the cottage

---

[3] Neighbors also correctly assert that the cottage cannot be permitted as an "accessory unit dwelling" under Bylaw § 401 or 24 V.S.A. § 4412(1)(E). Pursuant to those provisions, an accessory unit dwelling (or "accessory dwelling unit" under the statute) must be "located within or appurtenant to an owner-occupied single-family dwelling." As the property owners do not reside on the Property and there is no single-family dwelling, this potential use does not include the cottage.

as an "accessory" or "related" use subordinate to the inn.[4]  Under Article 10 of the Bylaw, an "accessory use" is defined as: "A use [] on the same lot with, and of a nature customarily incidental and subordinate to, the principle [sic] use or structure."  An accessory structure supports such a use.  Bylaw Art. 10.  Accessory uses are permitted uses in the AR II District that must undergo site plan review.  Bylaw §§ 209, 210(4).

Neighbors argue that this Court cannot consider whether the cottage is an accessory use because the issue was not raised in Neighbors' Statement of Questions.  A Statement of Questions defines the scope of the issues this Court may address on appeal.  In re Garen, 174 Vt. 151, 156 (2002).  This Court, however, may also "consider matters that are intrinsic to the statement of questions" and is not limited to the text of the questions themselves.  In re LaBerge NOV, 2016 VT 99, ¶ 15, 203 Vt. 98 (citing In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190).

Four of the Questions in Neighbors' Statement of Questions concentrate on whether the caretaker's cottage is a use that the Bylaw permits, in one form or another, in the AR II District.  We are directed to interpret a statement of questions liberally.  See Jolley Assocs., 2006 VT 132, ¶ 9 (citing In re Hignite, 2003 VT 111, ¶ 9, 176 Vt. 562 (mem.)); see also In re Joyce, 2018 VT 90, ¶ 16 (explaining that the statement of questions "serves to focus, but cannot limit, the issues for the court.").  Accordingly, we conclude that the question of whether the cottage can be permitted as an accessory use is intrinsic to Neighbors' Statement of Questions.

While this brings the accessory use issue within the Court's purview, the DRB did not analyze whether the cottage might qualify as an accessory use below.  While its decision is not entirely clear, the DRB apparently considered the cottage as part of the inn and subjected it to conditional use review.

---

[4] The parties' original summary judgment filings did not directly address the question of whether the cottage could qualify as an accessory use to the inn.  To ensure the parties had the opportunity to be heard, this Court held a status conference on July 22, 2019.  The parties requested fourteen days to brief the question, which the Court provided.

This Court limited the scope of these briefs at the July 22, 2019 conference.  We made clear that the parties should limit their discussion to whether the cottage qualified as an accessory use.  Narrowing the discussion was especially important because the parties agreed, for expediency's sake, not to file responses.  While Neighbors abided by the limit this Court placed on the subject matter, Midway did not.  To guarantee equal treatment of the parties, we do not consider or otherwise take into account those of Midway's arguments that exceeded the scope this Court defined at the status conference.

As this is a Court of limited appellate jurisdiction, we may only evaluate applications that underwent a full review by the appropriate tribunal below. In re Margaret Pratt Assisted Living Site Plan, Conditional Use & Act 250 Approvals, Nos. 111-8-14 Vtec, et al., slip op. at 12-13 (Vt. Super. Ct. Envtl. Div. June 21, 2016) (Durkin, J.) (citing In re Torres, 154 Vt. 233, 236 (1990)). Accordingly, this Court avoids resolving new issues never presented to the tribunal below, where interested persons have not had the opportunity to raise their concerns through the local process. In re Irish Constr. Application, No. 44-3-08 Vtec, slip op. at 10-11 (Vt. Envtl. Ct. Apr. 6, 2009) (Durkin, J.) (citing In re Honora Vineyard Application, No. 279-12-07 Vtec, slip op. at 11-12 (Vt. Envtl. Ct. Oct. 31, 2008) (Durkin, J.); In re Maple Tree Place, 156 Vt. 494, 500 (1991)). Remand may be appropriate in such circumstances. Maple Tree Place, 156 Vt. at 500; see also V.R.E.C.P. 5(j).

The DRB did not consider whether the independent caretaker's cottage is "customarily incidental" and "subordinate" to the principal use of the Property as an inn. See, e.g., In re Gould Accessory Dwelling Application, No. 33-3-11 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Aug. 23, 2011) (Wright, J.) (remanding to allow the municipality to determine whether a dwelling unit was "accessory" in the first instance). Also, an accessory use must undergo site plan review as a permitted use in the AR II District. We therefore conclude that we must **REMAND** the matter to allow the DRB to make the relevant determinations in the first instance.

## II. Whether the proposed tap house is permittable as part of the inn.

While we ultimately remand, this Court may reach issues that are likely to arise during any future litigation of a matter in the interest of judicial economy. See In re Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶ 23 (citing In re Taft Corners Assocs., 160 Vt. 583, 632 (1993)); In re 34 Fitzsimonds Rd 3-Lot Subdivision, No. 68-6-18 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Apr. 25, 2019) (Durkin, J.); see also V.R.E.C.P. 5(j). Thus, we now consider Midway's proposed tap house.

It is uncontested that the 2018 Inn Permit allows Midway's inn to include a *private* restaurant for inn guests and closed functions. While Neighbors do not appear to dispute this—nor could they, as the terms of the 2018 Inn Permit cannot be challenged here—they do contest opening the dining facility to the public and housing it in a structure separate from the inn.

Neighbors argue that the proposed tap house is a bar, tavern, or restaurant under the Bylaw, none of which are permitted or conditional uses in the AR II District. They further assert that the tap house cannot be permitted as part of the inn.

Midway does not appear to contest that the tap house, if considered on its own, could not qualify as a use the Bylaw allows in the AR II District. Instead Midway offers that the permitted inn use can include the tap house.

We apply the same principles of ordinance interpretation set out above, which instruct us to begin with the plain language and to apply other rules if ambiguity arises. Lathrop, 2015 VT 49, ¶ 22 (citing Evans, 2014 VT 104, ¶ 13); Confluence Behavioral Health, 2017 VT 112, ¶ 20. We may consult dictionary definitions, other Vermont case law considering the meaning of a term in different contexts, and cases from other jurisdictions. See, e.g., Confluence Behavioral Health, 2017 VT 112, ¶¶ 25-26, 31; Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 27, 178 Vt. 35. Because zoning regulations "are in derogation of private property rights," this Court must resolve any lingering ambiguity in favor of the property owner. Lathrop, 2015 VT 49, ¶ 29 (quoting In re Champlain Oil Co., 2014 VT 19, ¶ 2, 196 Vt. 29).

The Bylaw contains definitions for "bar," "tavern," and "restaurant." See Bylaw Art. 10. It is apparent from the plain meaning of the Bylaw that the tap house, if standing alone, would fall within the definitions of "bar" and "tavern," though perhaps fits better under the definition of "restaurant." See id. As these are not permitted or conditional uses in the AR II District, the tap house could not be permitted on its own. See Bylaw § 210(4) (defining the uses allowed in the AR II District). Accordingly, we must consider whether the tap house qualifies as part of the inn.

As stated above, the Bylaw defines an inn as:

> A building or group of buildings on a single parcel which contains fewer than twenty-five (25) guest rooms which are rented out to provide overnight accommodations to transient travelers on a short-term basis, and *which may offer dining facilities*.

Bylaw Art. 10 (emphasis added).

As inns can include dining facilities, the question becomes whether the tap house, which will be located in a building separate from the inn and opened to the public, constitutes a dining facility.[5]

### A. The term "dining facility" includes public food establishments.

The Bylaw does not define "dining facility." As the plain meaning of the term clearly encompasses some sort of food establishment, but does not otherwise indicate whether the facility can be public, we must resort to other tools of ordinance interpretation.

Vermont Courts have assigned a broad and generally inclusive meaning to the term "facility" in the past. See, e.g., In re Town of Charlotte Recreational Trail, No. 98-5-08 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Feb. 14, 2011) (Durkin, J.); see also State v. Goldman Indus. Grp., Inc., No. 816-12-02 Wncv, slip op. at 12 (Vt. Super. Ct. May 19, 2003) (Teachout, J.) (concluding that an "expansive definition" of "facility" was appropriate); Confluence Behavioral Health, 2017 VT 112, ¶¶ 26, 27 (reading a "broad definition" out of the term "health care facility").

Other parts of the Bylaw and its use of the term "facility" corroborate an interpretation of the term that is broad and generally inclusive. For instance, the definition of "Ski Facility/Service" specifically excludes "lodging facilities" from its coverage. Bylaw Art. 10. The definition generally includes hotels and inns as examples of "lodging facilities," and also indicates that the term would include other short-term accommodations. Id.

As we presume the Bylaw's drafters used the same terms to connote the same meanings, we interpret "dining facility" in a similarly broad manner. See Towslee v. Callanan, 2011 VT 106, ¶ 9, 190 Vt. 622 (concluding that the trial court properly assigned the same meaning to the same term used in different places). Such a reading of the term does not provide for the exclusion of food establishments that are open to the public. We cannot read such an exclusion into this

---

[5] As is apparent from the preceding definition, the Bylaw requires any group of buildings comprising an inn to be located "on a single parcel." The Property consists of four separate but contiguous parcels that total 86 acres. Midway plans to place the tap house (and caretaker's cottage) on a separate parcel from the parcel on which the inn at Burklyn Manor sits.

We conclude that this does not present a concern because, according to the Bylaw, a "lot" may consist of "[a] combination of complete lots of record . . . ." Bylaw Art. 10. While "parcel" is not separately defined, the Bylaw defines lots in terms of parcels—the definition of lot begins by stating "[a] lot is a parcel of land"—so we consider the terms synonymous. See also Black's Law Dictionary 1002 (5th ed. 1979) (defining "parcel" and stating that the "[t]erm may be synonymous with 'lot.'")

broad term when one was not provided for.[6] <u>Confluence Behavioral Health</u>, 2017 VT 112, ¶ 39 n.6 (citing <u>In re Willowell Found. Conditional Use Certificate of Occupancy</u>, 2016 VT 12, ¶ 19, 201 Vt. 242) ("Evidence of an intent to exclude a [specific use] would have to be direct and specific within the Bylaws.")

Neighbors urge that because the tap house as proposed fits within the definitions of bar, tavern, and restaurant, this Court should categorize it under these uses. It is undisputed that the Bylaw excludes these uses from the AR II District. The Bylaw, however, does allow inns, which include dining facilities, in the AR II District following conditional use review. Neighbors do not explain why the tap house could not *also* fall under the definition of a dining facility as part of the inn use.[7]

Ultimately, in the absence of any other indications of the drafters' intent, we must construe zoning ordinances narrowly in favor of the property owner. <u>In re Toor</u>, 2012 VT 63, ¶ 9, 192 Vt. 259 (citing <u>In re Weeks</u>, 167 Vt. 551, 555 (1998)). Zoning codes derogate the common law property rights of permit applicants, so we resolve uncertainty to their advantage. <u>Id</u>.; <u>In re Vitale</u>, 151 Vt. 580, 584 (1989).

---

[6] Interpreting the definition of an inn to include a public restaurant corresponds with the conclusions reached by other jurisdictions in the limited set of cases relevant to our analysis. In <u>D'Ambra v. Uyttebroek</u>, for instance, the Superior Court of Rhode Island concluded that "[w]hen a restaurant is a component of a hotel, the restaurant is neither a principal use nor an accessory use, but is instead only part of a hotel." No. WC 07-0520, slip op. at 13-14 (R.I. Super. Ct. Feb. 23, 2009) (Thompson, J.). The Court went on to conclude that, as part of the hotel, the restaurant did not require a separate special use permit. <u>Id</u>. at 14; <u>cf</u>. <u>Riya Cranbury Hotel, LLC v. Zoning Bd. of Adjustment of the Twp. of Cranbury</u>, No. L-1720-11, slip op. at 7 (N.J. Super. Ct. Law Div. Mar. 5, 2012) (Hurley, J.) ("A restaurant can be a principal use alone or accessory to a hotel use."), *cert. denied*, 220 N.J. 99.

[7] This Court's reasoning in <u>In re Godfrey Conditional Use Permit</u>, which Neighbors reference in support of their motion, does not have bearing on the present matter. No. 67-5-13 Vtec (Vt. Super. Ct. Envtl. Div. Jan. 23, 2014) (Walsh, J.). In that case, the applicant sought a permit for a restaurant use but the Court concluded that the regulations did not allow the use in the relevant district. <u>Id</u>. at 3. The Court also evaluated whether the restaurant could qualify as a "home industry or service business" incidental to his residential use of the property. <u>Id</u>. at 4. Under the regulations, home industries could only be carried on as uses accessory to the residential use if the use was otherwise permitted in the district. <u>Id</u>. Because a restaurant was not otherwise permitted, the applicant could not carry on the use under the name of a home occupation. <u>Id</u>.

In <u>Godfrey</u>, the regulations did not allow any use like a restaurant and home occupations were defined narrowly in terms of the uses otherwise allowed in the district. Here, however, a food establishment is expressly provided for as part of the inn use, so <u>Godfrey</u> is not informative.

Based on the foregoing, we conclude that the tap house may be permitted as the dining facility for the inn. That it will service the public as well as inn guests does not exclude it from this category.

Additionally, while the tap house may be permitted as part of the inn, it must still receive conditional use approval. See Lathrop, 2015 VT 49, ¶ 28 ("We emphasize that just because the Bylaws permit sand and gravel extraction in any district does not mean that such an operation will end up in the middle of a high-density residential or commercial district . . . Such is the nature of conditional use review . . . ."). Neighbors' primary concerns appear better addressed to conditional use review; they do not serve as reasons to exclude public food establishments from the inn use.

For these reasons, we conclude that the proposed tap house constitutes a dining facility as part of the inn. We therefore turn to two additional legal issues relating to the tap house. First, we evaluate whether the dining facility can operate in a structure separate from the inn building under the Bylaw. Next, we consider how our review is affected by the fact that the tap house comes before this Court as part of an application seeking amendment to the 2018 Inn Permit.

B.     **The dining facility can be housed in a building separate from the principal inn structure.**

Neighbors also argue that the tap house cannot be located in a separate structure and still be considered part of the inn. They allege that the 2018 Inn Permit required Midway to site the private restaurant within the inn.

The Court cannot find support for this assertion in the record, which includes the DRB's October 10, 2018 decision approving the 2018 Inn Permit and the minutes for the meeting that led to that decision. In fact, we read the DRB's finding that "[t]here is a restaurant *on the property* . . ." in its October 10, 2018 decision to indicate that the DRB did not require Midway to place the restaurant within the inn, or even contemplated that the restaurant would be distinct from the inn. See Clayton v. Clayton Invs., Inc., 2007 VT 38A, ¶ 13, 182 Vt. 541 (quoting In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978)) (declining to read an implicit condition into a permit because "[p]ermit conditions must be explicit and 'must be expressed with sufficient clarity to

give notice of the limitations on the use of the land.'"); see also In re Kostenblatt, 161 Vt. 292, 299 (1994).

Further, we find it dispositive that the definition of an inn specifically allows a "group of buildings" to serve as part of the inn. Bylaw Art. 10. As the 2018 Inn Permit does not confine the restaurant to the inn structure itself, and an inn can consist of multiple structures under the Bylaw, we conclude that Midway can house the tap house in the carriage barn without excluding it from the inn use.

In sum, because an inn in the AR II District can include a public dining facility in an independent structure, we conclude that the tap house can be permitted as part of the inn. Therefore, we **DENY** Neighbors' motion with respect to Questions 1 and 2 of their Statement of Questions.[8]

### C.    The tap house application's status as an amendment to the 2018 Inn Permit does not affect this Court's review.

Because Midway seeks to permit the tap house as part of the inn, the tap house aspect of its application is before us as an amendment to the 2018 Inn Permit. Because the parties discuss the implications of the application's status as an amendment, we here take a moment to address the issue.[9]

Contrary to Neighbors' suggestion, classifying the tap house application as an amendment does not amount to a substantial change to the application that requires DRB review in the first instance, depriving this Court of appellate jurisdiction. The Bylaw does not define a separate set of regulatory standards for permit amendment and new applications. Conditional use review applies to inn permits in the AR II District regardless.

---

[8] Question 2 asks whether the tap house should not be permitted because it does not qualify as one of the broader set of uses the Bylaw allows for when the applicant proposes an "adaptive reuse" of a historic accessory structure. See Bylaw § 406. Because the tap house qualifies as part of the inn, we do not reach the moot question of whether it would be permissible under this provision.

[9] Our discussion here has no bearing on the question of whether Midway's present application has implications under Act 250. Midway has supplemented the record with an October 1, 2018 jurisdictional opinion from the District #7 Environmental Commission. The jurisdictional opinion states that the change in use sanctioned by the 2018 Inn Permit did not require an Act 250 permit. We do not comment here on whether the proposed changes relevant to this appeal disturbs that conclusion, as we do not have any Act 250 questions before us. See In re Investigation into Programmatic Adjustments to Standard-Offer Program, 2018 VT 52, ¶ 17 (emphasizing the unconstitutionality of advisory opinions); V.R.E.C.P. 5(f) (this Court only has jurisdiction over issues raised by the Statement of Questions).

In addition, the Vermont Supreme Court has recognized that the difference between a new application and a permit amendment application can be trivial when there is a preexisting permit. As stated in Lathrop, "[w]here there is a preexisting permit, it should not matter to applicable regulatory standards whether the applicant submits a new application or requests an amendment to an existing permit . . . ." 2015 VT 49, ¶ 66. Either way, precedent and the Bylaw instruct this Court to approach the application in the same manner.

This brings us to the next implication of the present application's status as an amendment. Lathrop goes on to define the manner of review for applications that propose to change the terms of a prior, binding permit. In relevant part, Lathrop directs this Court to review proposed amendments that "seek[] to change or avoid permit restrictions or conditions" under the standards set forth in Hildebrand. Id.; see In re Hildebrand, 2007 VT 5, ¶ 12, 181 Vt. 568 (applying the three-part test set out in In re Stowe Club Highlands, 166 Vt. 33, 37-38 (1996), and In re Nehemiah Assocs., 168 Vt. 288, 294 (1998), to municipal permit amendments).

On the other hand, as this Court and the Vermont Supreme Court have observed, not every permit amendment triggers a Hildebrand analysis. Only amendments seeking to alter or contradict prior permit conditions require this additional review. See Lathrop, 2015 VT 49, ¶ 66; see also In re Stowe Highlands Merger/Subdivision Application, 2013 VT 4, ¶¶ 12-13, 193 Vt. 142 (declining to apply Hildebrand when the amendment did not contradict a condition of the underlying permit); In re Deerfield Valley Transit Ass'n, No. 177-7-06 Vtec, slip op. at 7-8 (Vt. Envtl. Ct. Apr. 5, 2007) (Durkin, J.) (citation omitted).

Because the tap house amendment does not seek to avoid conditions of the 2018 Inn Permit, but actually complies with them, we conclude that the Hildebrand test does not apply in this matter. Here, the relevant condition in the October 10, 2018 DRB decision issuing the 2018 Inn Permit requires that "[i]f in the future [Midway] decide[s] to open the restaurant they must come back to the Development Review Board for a change of use permit." Midway has done just that. This is a condition that this Court has seen before and has treated in similar fashion. See, e.g., In re Mountainside Props., Inc., Land Use Permit Amendment, No. 117-6-05 Vtec, slip op. at 10 (Vt. Envtl. Ct. Dec. 13, 2005) (Durkin, J.); see also In re Eustance Act 250 Jurisdictional Op., 2009 VT 16, ¶¶ 19-23, 185 Vt. 447.

Accordingly, while the tap house amendment is subject to conditional use review as part of the inn, Midway's proposal does not implicate the additional Hildebrand analysis.

**Conclusion**

For the reasons articulated above, we conclude that the caretaker's cottage Midway proposes does not qualify as a single-unit dwelling or an accessory unit dwelling under the Bylaw. Nor can the cottage be permitted as part of the inn. The cottage may, however, meet the standards of an accessory use to the inn. Accordingly, we **GRANT IN PART** Neighbors' motion with respect to the issues of whether the cottage qualifies as part of the inn, as a single-unit dwelling, or as an accessory unit dwelling. We **DENY IN PART** Neighbors' motion because the cottage may constitute an accessory use. We also **DENY** Neighbors' motion on the issue of whether the tap house can be permitted as part of the inn.

Because the DRB did not consider the cottage as an accessory use, and did not conduct the necessary site plan review, this Court **REMANDS** the matter for the DRB's consideration in the first instance.

This concludes the current proceedings before the Court. A Judgment Order accompanies this Decision.

Electronically signed on August 29, 2019 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

14